UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERESA W.

           Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00106 EAW

# INTRODUCTION

Represented by counsel, plaintiff Theresa W. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (Dkt. 8; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 13) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on March 18, 2014. (Dkt. 6 at 166).[1] In her application, Plaintiff alleged disability beginning January 1, 2014. (*Id.*). Plaintiff's application was initially denied on June 12, 2014. (*Id.* at 95-100). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird on November 15, 2016. (*Id.* at 61-86). On June 30, 2017, the ALJ issued an unfavorable decision. (*Id.* at 26-39). Plaintiff requested Appeals Council review, and her request was denied on July 17, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 10-16).

Plaintiff appealed the Commissioner's decision to the United States District Court for the Western District of New York, and on October 15, 2019, the Honorable Leslie G. Foschio, United States Magistrate Judge, remanded the case for further administrative proceedings. (*Id.* at 562-71). The Appeals Council remanded the case to the ALJ on October 22, 2019. (*Id.* at 585-88).

A second hearing before the same ALJ was held on January 17, 2020. The ALJ issued an unfavorable decision on February 12, 2020. (*Id.* at 439-55). Plaintiff again appealed the Commissioner's decision to the United States District Court for the Western District of New York, and on September 23, 2021, the Honorable Lawrence J. Vilardo, United States District Court Judge, again remanded the matter for further administrative proceedings. (Dkt. 7 at 140-50). The Appeals Council remanded the case to the ALJ on

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

January 5, 2022.  (*Id.* at 153).

Additional hearings were held before ALJ Paul Georger on January 13, 2023, and July 10, 2023.  (Dkt. 7 at 70-105, 63-69).  On October 4, 2023, the ALJ issued an unfavorable decision.  (*Id.* at 29-51).  This action followed.

## **LEGAL STANDARD**

### I. **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden

shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 18, 2014, the application date. (Dkt. 7 at 32).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, panic disorder, and degenerative disc disease of the lumbar spine. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, cocaine dependence, chronic obstructive pulmonary disorder, and obesity were non-severe. (*Id.* at 33).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 34). The ALJ particularly considered the criteria of Listings 1.15, 1.16, 12.04, 12.08 and 12.15 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following limitations:

> simple, routine, repetitive tasks, not at a production rate, simple work-related decisions, occasional interaction with supervisors, coworkers and the public, no teamwork, such as on a production line.

(*Id.* at 36).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 49). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, hospital; industrial cleaner; and floor waxer. (*Id.* at 50-51). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 51).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative remand the matter for further administrative proceedings, on the following grounds: (1) the ALJ failed to comply with the September 2021 Order for remand and his determination of Plaintiff's RFC was not supported by substantial evidence; and (2) the ALJ erred in his assessment of medical opinion evidence. (Dkt. 8-1 at 16-26). Because the Court agrees that substantial evidence does not support the ALJ's assessment of the evidence, remand of the matter is necessary.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citations omitted).

Similarly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558 (DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (quotation and citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation, citation, and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). If the ALJ neglects to expressly apply the requisite factors, it is considered a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give

good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that the Commissioner will always give good reasons for the weight given to a treating source opinion. . . . Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." (quotation, citations, and internal quotation marks omitted)).

"Unlike a treating source, a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'" *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)). "The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is 'not required to articulate how [he or she] considered evidence' is from nonmedical sources." *Erin B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at *8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at *3 (W.D.N.Y. May 24, 2022) ("For medical opinions of consultants or non-treating sources, 20 C.F.R. § 416.927(c)(3) provides that 'because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical

opinions will depend on the degree to which they provide supporting explanations for their medical opinions.'" (quoting *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 n.4 (2d Cir. 2018))).

Plaintiff challenges the ALJ's assessment of the opinions provided by internal medicine consultative examiner Gilbert Jenouri, M.D., and impartial medical expert and orthopedic surgeon Eric Schmitter, M.D., arguing that the ALJ's decision failed to comply with the 2021 remand order. Specifically, in his September 2021 Decision and Order, Judge Vilardo remanded the matter for further administrative proceedings in part because the ALJ gave no weight to Dr. Jenouri's opinion, the only physical medical opinion in the record, which created a gap in the record that hindered an ability to determine the RFC. (*Id.* at 146-47). The ALJ sought testimony from Dr. Schmitter at the January 13, 2023 hearing in an apparent attempt to fill that gap, but Plaintiff contends that the ALJ's reasons for crediting Dr. Schmitter's testimony over Dr. Jenouri's are not supported by substantial evidence. The Court agrees.

Dr. Jenouri conducted an examination of Plaintiff on November 17, 2019. (Dkt. 6 at 739-49). He noted her reports of low back pain, COPD, and hypertension, but his examination reflected that she was not in acute distress and had a normal gait. Dr. Jenouri diagnosed Plaintiff with low back pain, bilateral lower extremity radiculopathy, chronic obstructive pulmonary disease, and hypertension. He opined that she has moderate restrictions in walking/standing long periods, bending, stair climbing, lifting, and carrying, and should avoid smoke, dust, and other known respiratory irritants. In his medical source statement, Dr. Jenouri opined that Plaintiff can occasionally lift and carry up to 10 pounds,

sit for two hours at one time and for a total of four hours in an eight-hour workday, stand for one hour at one time and for a total of two hours in an eight-hour workday, and walk for one hour at one time and for a total of two hours in an eight-hour workday. He opined that she could frequently reach, handle, finger, feel, push, and pull with the bilateral upper extremities and occasionally operate foot controls bilaterally. Dr. Jenouri concluded that Plaintiff can occasionally climb stairs and ramps, but can never climb ladders/scaffolds, balance, stoop, kneel, crouch, and crawl, and can tolerate occasional exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle. He also opined that she can never tolerate exposure to humidity, wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations, and cannot walk a block at a reasonable pace on rough or uneven surface.

The ALJ accorded little weight to Dr. Jenouri's opinion. He explained his reasoning as follows:

> Although he is an examining source, his opinion is not supported by his own examination findings or consistent with the evidence in [Plaintiff's] treatment records. The limitations he identified are well out of proportion to the examination findings and [Plaintiff's] activities of daily living. For example, Dr. Jenouri's opinion that [Plaintiff] can only occasionally lift and carry 10 pounds is not supported by or consistent with examination findings of full upper extremity strength and range of motion and 5/5 grip strength. His opinion as to [Plaintiff's] ability to sit, stand, and walk (including on rough or uneven surfaces) is not supported by his own examination findings of normal gait and 5/5 lower extremity strength, with no use of any assistive devices. Her reduced lumbar and hip range of motion with sciatic tenderness and positive straight leg raising does not account for such extreme exertional limitations, especially in light of [Plaintiff's] generally benign examination findings from treating sources noted above. Dr. Jenouri opined that [Plaintiff] is limited in her ability to reach, handle, finger, feel, push, and pull, but his own examination showed [Plaintiff] to have full upper extremity range of motion, 5/5 grip strength, intact hand and finger dexterity, and 5/5 upper

>extremity strength. As a result, his opinion is not consistent with his own findings or [Plaintiff's] reported ability to braid hair as self-employment. Similarly, Dr. Jenouri's opinion that [Plaintiff] is limited to occasional operation of foot controls, occasional climbing ramps and stairs, and no other postural activities is unsupported. For example, his own examination showed [Plaintiff] could squat 50% and rise from a chair without difficulty. A complete inability to balance, stoop, kneel, and crouch is not supported by any objective evidence and is inconsistent with [Plaintiff's] reported activities of daily living. Finally, Dr. Jenouri's opinion as to environmental limitations overestimates the severity of her asthma, as his own examination showed the claimant to have clear lungs, and records from treatment providers do not demonstrate significant pulmonary abnormalities. Thus, Dr. Jenouri's opinion is not supported by or consistent with the longitudinal signs and findings in [Plaintiff's] treatment records, his own examination findings, or the claimants' reported activities of daily living. Most significantly, Dr. Jenouri's opinion is wholly inconsistent with the opinion of impartial ME, Dr. Schmitter, who specifically discounted the opinion and residual functional capacity assessment, noting that the extreme limitations were not substantiated by that or any other examinations and again emphasized her failure to pursue orthopedic treatment, and whose opinion has been given substantial weight as discussed below.

(Dkt. 7 at 45).

As noted, Dr. Schmitter testified at Plaintiff's January 2023 hearing. The ALJ described Dr. Schmitter's hearing testimony as follows:

>At the hearing on January 13, 2023, the impartial medical expert Dr. Eric Schmitter, MD, Certified Orthopedic Surgeon, testified that upon his review of the file, despite [Plaintiff's] complaints of low back pain, he discounted the severity of the condition, noting that she never was seen by an orthopedic provider, and that examinations completed by general primary providers, citing Exhibits 5F, 6F, 8F, showed nothing more mild degenerative changes in the spine. Moreover, Dr. Schmitter specifically discounted the opinion and residual functional capacity assessment by consultative examiner Dr. Jenouri at Exhibit 12F, noting that the extreme limitations were not substantiated by that or any other examinations and again emphasized her failure to pursue orthopedic treatment. Dr. Schmitter further denied that she meets or equal any listing, noting that the only diagnoses would be mild degenerative disc disease. As for vocational restrictions, Dr. Schmitter testified that it was hard to say with no orthopedic examination present, but would put her in the medium category in terms of carrying and lifting, and that he would not

> impose any postural limitations because of the limited information in the record. When questioned by [Plaintiff's] representative regarding the consultative examination at 12F, he denied that [Plaintiff] would have any ailment to impair her ability to work five days, for eight hours per week because, he reiterated that the record was devoid of any orthopedic information rendering it difficult to give accurate information, that having never seen back a specialist, he discounts the severity of the claim and he was generous in estimating that she would be limited -- if at all -- to medium exertion.

(Dkt. 7 at 37).

The ALJ explained his reasoning for giving Dr. Schmitter's opinion substantial weight:

> The undersigned has accorded substantial weight to opinion in this regard as Dr. Schmitter is an expert familiar with the applicable standards of the listed impairments. Accordingly, the undersigned finds that [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Additionally and as noted above, Dr. Schmitter had the benefit of reviewing the entire medical history and specifically discounted the opinion and residual functional capacity assessment by consultative examiner Dr. Jenouri at Exhibit 12F, noting that the extreme limitations were not substantiated by that or any other examinations and again emphasized her failure to pursue orthopedic treatment. Dr. Schmitter further denied that she meets or equal any listing, noting that the only diagnoses would be mild degenerative disc disease. Dr. Schmitter's opinion, while acknowledging that it was hard to say with no orthopedic examination present, that [Plaintiff] would be capable of medium exertion in terms of carrying and lifting, and that he would not impose any postural limitations because of the limited information in the record, is well supported. This opinion is the most informed, consistent with the medical evidence of record, and consistent with the record as a whole, and has been accorded substantial weight (20 CFR 416.927).

(Dkt. 7 at 48-49).

A review of Dr. Schmitter's hearing testimony makes it difficult for the Court to conclude that his testimony served to close the gap in the record which served as the basis

for the previous remand. For example, when asked by the ALJ if there were any vocational restrictions he might impose, Dr. Schmitter testified:

> Well, that's hard to say. Again, the evaluation by a skilled person who knows how to examine a back is not present. So, it's difficult for me to substantiate any significant limitations in term of physical function. But I think put it in . . . the medium category in terms of carrying, lifting, you know. So I think that's an estimate. But really—there's so little information it's hard for me to come to a firm conclusion.

(Dkt. 7 at 80). Similarly, when asked if there were any postural restrictions he would impose, he stated, "I cannot substantiate any significant limitations given the very limited information in this record." (*Id.*).

When asked by counsel if Plaintiff had any ailments that would impair her ability to work eight hours a day, five days a week, Dr. Schmitter stated:

> Well, I think what I said very succinctly is there is so little orthopedic information. It is virtually impossible for me to give a good accurate evaluation of the function. But again, because she has never been seen by a back specialist I discount the severity of her problem. And therefore, generously I thought, put her in the medium category in terms of physical function, carrying, lifting that sort of thing . . . . So, and then just that's an estimate because frankly there's almost no information.

(*Id.*).

Dr. Schmitter's equivocation and expressed concession that there was insufficient information in the administrative record for his opinion to be anything other than an estimate makes it hard for the Court to conclude that the ALJ sufficiently developed the administrative record. *See Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *4 (E.D.N.Y. Sept. 23, 2022) ("Though the most obvious gaps in a record typically are akin to missing medical evidence, inconsistencies or vague opinions can also

create a duty to further develop the record."). In essence, the ALJ's characterization of Dr. Schmitter's opinion as being the "most informed" appears to be the result of cherry-picking from only portions of what Dr. Schmitter actually stated. *See Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." (quotation and citation omitted)). Without an ability to reconcile the basis for the ALJ's determination to give Dr. Schmitter's opinions substantial weight and accord less weight to Dr. Jenouri's opinion, the Court cannot conclude that the ALJ's determination was supported by substantial evidence. In addition, any error in this regard was not harmless because a determination that Plaintiff was capable of light or sedentary work would have resulted in a finding that Plaintiff was disabled. *See Schaal v. Apfel*, 134 F.3d at 504 (an ALJ's failure to comply with the Commissioner's regulations is not harmless where "application of the correct standard does not lead inexorably to a single conclusion").

In sum, because the Court concludes that the ALJ did not adequately evaluate the medical opinion evidence or provide good reasons for crediting Dr. Schmitter's opinions over those of Dr. Jenouri pursuant to the treating physician rule, remand is required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 13) is denied.

SO ORDERED.

                                              _____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   September 22, 2025
         Rochester, New York